### No. 2742.—Isidore Levy *v.* A. Friedlander.

A dry goods merchant who has engaged the services of a clerk to aid in carrying on his business is not liable to an action in damages by his clerk for simply taking a partner in the business, nor is he liable to such action because he has changed somewhat the character of his business from that of a wholesale notion store to that of a wholesale dry goods store. A clerk who has quit his employer under such circumstances without showing any good cause therefor can recover neither wages nor damages.

APPEAL from the Seventh District Court, parish of Orleans. *Collens*, J. *Saucier & Michinard*, for plaintiff and appellee. *Cooley* and *Phillips*, for defendant and appellant.

Howe, J. The plaintiff alleged that about the twenty-ninth of June, 1869, the defendant employed him and secured his services as managing clerk and salesman in a " wholesale fancy goods and notions

store, which said Friedlander stipulated and agreed to open and carry on alone and in his own individual name in the building forming the southwest corner of Chartres and Customhouse streets, in this city;" that he was employed for the month of July at $166 66, and for the year, commencing August 1, at $3000 per annum, payable monthly; that for several years prior to this time he had been, to the knowledge of the defendant, employed as a clerk in the " wholesale fancy goods and notions " business, and would not have engaged his services in any other business ; that he would not have contracted with defendant but for the representation by the latter that he would have no partner, and that in the event of success plaintiff might become interested with him; that said Friedlander refuses to fulfill his part of said contract, but has formed a business connection with a " wholesale dry goods house " in this city, and has abandoned his intended and proposed business in " wholesale fancy goods and notions." He alleges default on demand, and prays judgment for the amount of the salary due and as it shall fall due, less a credit of $50 paid.

The answer was a general denial, and an averment that " the respondent employed the plaintiff as a clerk in a house which he contemplated opening in this city, but that on opening said house or store plaintiff positively refused to comply with his contract or enter upon the discharge of the duties required of him by said contract without any just cause, but assigned frivolous and unfounded reasons for not doing so.

There was judgment for plaintiff as prayed for, and the defendant has appealed.

The main facts appear to be that in June, 1869, the defendant intended to establish himself in business, and employed the plaintiff as a clerk at the rates set forth above. The plaintiff was set to work to prepare the store on the southwest corner of Chartres and Customhouse streets for the reception of a stock of goods, and the defendant went on to New York to purchase a stock. While in New York the defendant modified his plans somewhat, and concluded to take a partner and to carry on a business at a store on the opposite side of Chartres street and sell at wholesale not only " fancy goods " and " notions " but " dry goods." The plaintiff thereupon refused to work for him, giving as a reason that he did not know the dry goods business and did not like the defendant's house, and he was therefore discharged. This was about August, 1869. In October, 1869, the plaintiff returned to the employment of the firm where he had been when the defendant engaged him, and at the same salary he had there received—$2000 per annum—and his work was that of a *general* salesman, the business of his employers being to sell at wholesale " *dry goods,* fancy goods and notions."

Levy v. Friedlander.

We must confess our inability to perceive in these facts any foundation for the judgment appealed from.

It will hardly be contended that a merchant who has employed a clerk with the expectation of opening a store on the southwest corner of a street has not the right to open it on the northeast corner and there require the services of his employe; or that such a change of plan will subject him to an action of damages or to the penalty of article 2749 of the Rev. C. C.

Nor do we think it can be contended with much more force that a merchant who employs a clerk with the expectation of carrying on business alone, precludes himself from the legal right to take a partner, or that such a change of plan will subject him to an action for damages or to the penalty of the article.

If the new partner were a person of infamous character, or should treat the clerk unjustly, the rights of the clerk might be changed, but there is no allegation or proof in this case of any such state of things.

There is nothing left in this record, then, on which to base the plaintiff's claim, except the theory that the defendant changed his business in such a way that the plaintiff properly refused to work for him, and his discharge was therefore unlawful under article 2749 of Rev. C. C. Admitting for the sake of argument that a complete change of business, as from that of grocer to that of gunsmith, would justify this position, we do not find any such state of facts in this case. A witness of experience states that the dry goods business and the notions business are the same thing; "that is," he says, "dry goods houses usually keep notions—some more and some less."

It appears also by the testimony of another disinterested witness that the defendant's house was of this kind, keeping a stock of "notions" and "fancy goods" as well as "dry goods," strictly so called. Mr. Worcester defines dry goods as "textile fabrics, such as are sold by linen drapers, mercers, etc., in distinction from groceries."

It also appears by plaintiff's own testimony, as stated above, that after his discharge by defendant he returned to his former employers, and took a place as general salesman in a business identical with defendant's, namely, dry goods, fancy goods and notions. We conclude that the reasons given by plaintiff for refusing to work for defendant's house were frivolous, and that he was properly discharged. Rev. C. C. 2750.

It is therefore ordered that the judgment appealed from be reversed, and that there be judgment in favor of defendant, with costs in both courts.

Rehearing refused.