## No. 53.

### FRANK A. BEHAN *v.* HY. BALLARD AND JOS. REIDER.

An action founded upon an act under private signature admits of no
other defense where the genuineness of said signature is denied by its
author.

This rule also obtains where defendant who signed the instrument dies,
after pleading the non-genuineness of his signature, for the rights of both
parties are fixed by the filing of the false plea and the death of neither
party can affect the legal rights of the other.

Signatures, the genuineness of which are contested, may be proven only
by:—(1) Testimony of experts; (2) *Comparison of writings;* (3) and by
witnesses who saw the party sign or who are familiar with the signature
of the party who signed the act; and the court must disregard evidence
tending to establish the signature of defendant by his own admission.

*Appealed from Fifth District Court, Parish of Orleans.*

*Horner & Benedict,* attorneys for plaintiff, appellee.

*Sambola & Ducros,* attorneys for defendant, appellant.

Behan vs. Ballard and Reider.

His Honor Judge Frank McGloin delivered the opinion and decree of the Court in the words and figures following, to wit;

Plaintiff sues Henry Ballard as principal and Joseph Reider as surety upon a contract of lease for a balance of rent. The defendant Reider .pleads the general issues, accompanied by a special denial of the genuineness of his signature to the lease sued·upon. The case was twice examined before the lower Court, the second time being in pursuance of a new trial granted to Reider alone, the judgment becoming final as to Ballard. Reider contends, that upon the second hearing plaintiff did not prove the amount of the balance due, and that he should be non-suited.

Article 324 Code of Practice declares:—"When an action is founded on an obligation or an act under private signature which is alleged to have been signed ·by the defendant, such defendant shall be bound in his answer to acknowledge expressly or to deny his signature." Article 326, is to the following effect:—"The defendant whose signature shall have been proven after his having denied the same shall be barred from every other defense and judgment shall be given against him without further proceedings." The object of these two articles is apparent. Of all issues which may be presented to courts of justice for determination, there is none which is capable of presenting greater difficulties, than the one of forgery *vel non*. This is owing largely to the fact, that no individual signs his name twice in exactly the same manner, that the signature of the same person varies materially at different periods of life, and that forgeries are often so skillfully executed as to render it impossible, by simple inspection, to detect them. These circumstances render it desirable that courts should not be lightly, or wrongfully called upon to determine such a question. Therefore, the law has seen fit to adopt measures to secure this end and compel a party desiring to present this issue, to do so with deliberation, and in a manner which shall be explicit and unmistakable, all as an additional guarantee to compel him to an election between all other defenses upon one hand, and this particular plea upon the other.

Still further, when the law imposes upon a defendant the obligation of expressly affirming, or solemnly denying what is alleged to be his own proper signature, and he falsely declares that the writing is not his, his falsehood is deliberate. It is but just that he should be punished therefor. At the same time, the plaintiff who has fraudulently been imposed upon, the labor and difficulty of establishing the genuineness of the disputed signature, is to a certain extent indemnified by being relieved from the burden of proving any other fact in the case. This does not follow, by reason of this being in its nature special like payment, etc., necessarily admitting the debt it is set up as extinguishing, for it is in its nature a negative and not an affirmative plea. The purpose of C.P. Article 326, is to impose a penalty upon defendants who falsely deny their signatures, and when this issue is presented, it excludes all other issues from the case. Commercial Bank vs. Harrison, 24 La. Ann. 439; Steele vs. Hampton, 22 La. Ann. 439; Welch vs. Terrebone, 6 La. Ann. 78; Bradford vs. Cooper, 1 La. Ann. 326; Cochrane vs. Perry, 12 La. 11; Ware vs. Elam, 8 M. (n.s.) 329. We consider, therefore, that plaintiffs are entitled to judgment, upon proof alone, of the disputed signature, if such was made. Pending the suit, defendant Reider died and his widow and heirs became parties to the suit. Their counsel advanced the authority of Branford vs. Cooper, 1 La. Ann. 326, as exempting heirs and representatives of the party whose signature is contested from the penalty imposed by article 326. This ruling is placed on the ground that if a writing is alleged to be his own, he must be cognizant of its character, whether genuine or false, while his heirs or the representatives of his estate may have no means of certain knowledge. This rule, however, cannot be extended to a case where, as in this, the party alleged to have personally executed the writing issued and himself made up the pleadings. In such a case when the time comes for the election, he has the personal knowledge necessary to enable him to make it advisedly, and he is individually guilty of the wrong sought to be punished by the law, if his denial be false. His representatives or heirs, come into

the case, where he left it and they can not escape the consequences of what he has done. Furthermore, these articles of the Code of Practice not only inflict a penalty upon the unprincipaled defendent in the case, but they confer compensating rights on the plaintiff, all of which become fixed, the moment of the filing of the false plea; and the subsequent death of neither party can change or affect the issues, or impair the legal rights of the other.

Upon the question of the genuineness of this signature; plaintiff claims to have established this by three kinds of proof: 1st. by admission of the defendant; 2nd. by testimony of experts; 3rd. by comparison of writings. 1st. Defendant duly excepted to the introduction of evidence, going to establish admissions upon his part, bearing upon this issue. We believe the learned judge *a quo* erred in overruling the objection. We find applicable to this question, article 325 of the Code of Practice, and article 2245 of the Civil Code. The former, is to the following effect:—"If the defendant deny his signature in his answer or contend that the same has been counterfeited, the plaintiff must prove the genuineness of such signature by witnesses who have seen the defendant sign the act, or who declare that they know it to be his signature because they have frequently seen him write or sign his name. The proof by witnesses shall not exclude the proof by experts, or by a comparison of writings, as established in the Code." The latter article of the Civil Code, is as follows:—"If the party disown the signature, or the heirs or other representatives declare that they do not know it, it must be proved by witnesses or comparison of writings as in other cases." Article 325, of the Code of Practice is peremptory, using the strong word of compulsion, "Must", and leaves no doubt, that, if not satisfied *aliunde*, that all other modes of proof, except those designated, are excluded. It places the proving of signatures in such cases, amongst the list of things which require a special character of proof, such for instance as contracts affecting real estate, promises to pay the debt of another, non-cupative wills, confession of judgment upon mortgage or privileged claims, etc.

The principle *inclusio unus est exclusio alterius*, is clearly applicable to all such legislation, even where the word, must, or its equivalent is not used. Upon first blush, article 2245, Civil Code would seem to conflict with this article. If it did in fact hopelessly with the Code of Practice we would consider the controversy easily settled, by operation of section 514 of the Revised Statutes, which gives precedence to the Code of Practice. Such a disposition of the issue, would be supported by the authority of, Pligue vs. Lavrance, 9 La. 562. We held, however, in the case of E. J. Forstall's Sons & Co. vs. Hollingsworth & Flower, No. 58 on the docket of this court, lately decided, that in the task of interpreting different laws it was the first duty of the court to endeavor to reconcile them if possible, and that in so doing, we were at liberty, under article 14 of the Civil Code, to adopt for the language employed in the act, an unusual meaning, in place of the usual one, where this is absolutely necessary in order to avoid concession and conflict of laws. A careful consideration of these two provisions of our law, discloses, more ways than one of avoiding a conflict of legislation, and of causing the article of the Civil Code, to harmonize with the dominant provision of the Code of Practice. In the first place, the articles 324, 325, 326, apply by their letter, only to places, where, as in this, the disputed document is declared upon in the petition, and the denial of its authenticity, is expressly made in the answer, as required by Code of Practice 324. This, therefore, is special legislation, whereof, the application does not extend beyond the circumstances, referred to or expressly mentioned. On the other other hand, article 2244 and 2245, Civil Code, the first requiring a party against whom an act under private signature is produced, to formally avow, or deny his signature, and the latter as already quoted, providing for the manner of meeting the disavowal by proof are essentially rules of evidence, as is apparent from the title of the chapter of the code in which they are found by the character of the surrounding articles, in fact from its own language in using the term "is produced". Viewing these provisions of the Civil Code, either as the gen-

eral law upon this question, or as itself special legislation, they cannot affect the special cases covered by other legislation of a special character defining the result, arising from a particular line of pleading. Special legislation is always held as in the character of an exception to general law, independent of it in every respect. But, we might take another harmonizing view of the question. Civil Code 2245 permits disputed signatures, in the cases to which it is applicable, to be proved by "witnesses, or by comparison of writing as in other cases." The word "witnesses" has a twofold meaning. It is often employed, to designate persons, who were actually present, when the occurrence in question transpired, or a writing was executed. This definition is given by Webster's Dictionary, Verbo Witness, definitions three and four. The other signification applies to all persons who give testimony in a case. Taken in this first sense it would not cause the article of the Civil Code to conflict with those of the Code of Practice, by extending beyond the enumeration of the latter, but on the contrary the Code of Practice would be the more liberal admitting proof by persons who had not really witnessed the writing, but are familiar with the signature of the party. This would leave the phrase, "as in other cases," modifying only the words, "by comparison of writings," as it possibly would only do in any event, this entire portion of the sentence, being as it were, severed from the words "by witnesses," by means of the disputed "or". Were the intention to modify the whole, or any other part of the article, the phrase, "as in other cases," to make it clear this phrase should have appeared before the disjunctive, and the provision read, either in this matter, "it must be proved as in other cases, by witnesses, or comparison, etc."; or "it must be proved by witnesses, as in other cases, or by comparison of writings." Indeed, it might well be urged, that the words, "as in other cases," refers to other cases of this particular kind, i.e., a disputed writing, as for instance in the matter of probating a will, or proving the signature of an attesting witness to a writing, or a witness deposing in the same case on prior occasion, since dead, or in fact any case where

the disputed signature is not that of the party raising the issue, in all of which cases, proof by comparison being, in the nature of circumstantial evidence, would probably be accepted. This theory would find support in the fact that if the intention of this article, were to place proof of each signature, absolutely upon the same footing as other issues of fact, to be proven by witnesses testifying as freely as they could testify with regard to other matters, this article 2245 of the Civil Code would be a vain and useless enactment, because without it, the general rules of evidence would apply. And if the legislature nevertheless intended to do a useless thing, the language employed would be such as to declare that this fact, should be proven by any competent evidence, or words to that effect. The weight of authorities in this state, supports the conclusion reached by us upon this branch of the case and we must therefore disregard the evidence tending to establish the signature of defendant by his admission. Plicue vs. Lavranche, 9 La. 562; Dissel vs. Erwin, 10 La. 529; Bradford vs. Cooper, 1 La. Ann. 326; Segond vs. Roach, 4 La. Ann. 54; Fox vs. McDonough's Succession, 18 La. Ann. 445; Huddleston vs. Coyle, 21 La. Ann. 148; Succession Leonard, 21 La. Ann. 524.

The only evidence appearing in the record, as in the nature of testimony by experts is that of two deputy clerks from the office of the lower court, who stated that they were "not professional experts, but had some experience and knowledge of handwriting in general." We are not without the legal definition of the word "expert," as used in our law. Article 441 Code of Practice is to this effect:—"Persons versed in the knowledge either of a science, an art, or a profession, selected in order to give their opinion on some point or question on which the decision of a court depends, are termed experts." We do not consider the witnesses in question as having been shown to be experts as contemplated by law, and as particularly versed in the art of chirography. What they claim for themselves, that is, "having *some* knowledge and experience of handwriting in general," could be said truthfully by the great majority of educated persons in any community. Whether mer-

chants, professional men, clerks, or belonging to others of the intelligent class. We consider, that the law requires more than this in an expert, who must be one who has devoted special attention and study to the matter, in relation to which he testifies and has an amount of information thereon, which renders his opinion particularly superior and valuable, to be exempted from the operation of the rule of evidence, which requires witnesses to testify to facts, leaving it to the court or the jury to draw therefrom, their own opinions, or conclusions. Furthermore, Code of Practice, article 325, in declaring that its provisions shall not preclude "proof by experts" has in view the other articles of the Code, regulating and governing such proof. In other words, it means, that the articles of the Code of Practice, authorizing this character of evidence, upon other issues shall be applicable as well to this.

The whole of section 3, of chapter 4, of our Code of Practice is devoted to experts, auditors of accounts, and judicial arbitrators. The purposes for which they may be called in, the selection of one by each litigant, and of the umpire by the court, are all provided by the Code of Practice, article 441, etc. They are to take testimony, draw up a written report or award which is to be duly homologated, or rejected, after ten days notice and hearing by the court. It is this method and formality of proof, which article 325 contemplates, and not the simple placing of persons on the stand, selected by either party, after previous ascertainment of their opinions. The experts, auditors, and arbitrators, contemplated by the Code, are in the nature of quasi-judges (C.P. Articles 442, 452), who are to take testimony (Article 451), and hear parties (Article 450), before arriving at conclusions. We therefore, do not consider that plaintiff in this case has complied with the requirements of the law, applicable to the issue he was seeking to establish, by furnishing "proof by experts".

3rd. The remaining question is whether the plaintiff has made proof by comparison of writings. We consider the provisions of law, authorizing this mode of proof, as intending the production before the court of writings executed by the

party, whose signature is in dispute, which writing, must be acknowledged, or duly proven, according to law to the satisfaction of the court. The court or jury is then to compare for itself and arrive at a conclusion. It cannot apply to comparisons by general witnesses, the Code of Practice article 325, admits the testimony only of witnesses who saw the disputed writing executed or are familiar with the handwriting of the party, by having frequently seen him write and sign his name. It cannot contemplate a comparison solely by experts, for they do their work outside of the presence of the judge, and render their report. Furthermore, if the comparison by experts, were what was exclusively in view, the idea would be already covered by other portions of the article, and the phrase in question would be surplusage. In order, therefore, to comply with this provision of the law, the party seeking to prove a disputed signature, must produce before the court, writings, whose genuineness is placed beyond dispute, and the court must compare them with the writing which is contested. If they be entirely similar, the similarity constitutes circumstantial evidence from which the judge or jury must draw inferences or conclusions. In this case, the judge *a quo* caused the defendant in the presence of the court to write his name on slips of paper. There were also produced other writings, admitted to be genuine by the scurity. These slips however were not preserved, and the documents bearing the genuine signatures of the defendant, do not seem to have been offered in evidence and are not made part of this record.

When an appellate court, is called upon to review the conclusions of an inferior judge, when these conclusions are based upon a comparison of writing, it is evident, that without the production before it of such writings, with the contested signature, it cannot be in a positon to act. Appellees, having neglected to offer, or file, said writings in evidence, cannot present them to us for examination. This error, however, due to inadvertence, may be corrected, upon another trial, and being far from satisfied, that the signature of Reider to the lease sued upon is not genuine, we think justice requires us to

remand the case. It is therefore decreed, that the judgment appealed from be reversed, and this cause remanded to the lower court for further proceedings according to law, appellees to pay costs of appeal.

In this case His Honor Judge Rogers was recused. Thomas Gilmore, Esq., attorney at law, acting as judge *ad hoc* concurred in the above opinion.